In the matter of the alleged lunacy of JOHN FRELINGHUYSEN KENNEDY.

1. A finding of lunacy will be set aside where it appears that the commissioners remained in the jury-room with the jurors while they were deliberating as to their finding, in the absence of the alleged lunatic or his counsel, especially where, under such circumstances, they gave directions to the jury and informed them of the issue.

2. The consent of an alleged lunatic's counsel that the commissioners might be present with the jury while deliberating on their finding is not a consent to their giving directions in the nature of a charge in his absence.

---

Motion to set aside a return to an inquisition finding J. F. Kennedy a lunatic. Heard on petition and affidavits.

*Mr. Bartlett C. Frost* and *Mr. Henry S. Harris,* for the motion.

*Mr. William H. Morrow, contra.*

PITNEY, V. C.

The commission issued out of this court on the 25th of August, directed to three gentlemen, of whom one is a master of

In re Kennedy.

this court, directing them, in the usual form, to inquire as to the lunacy of John Frelinghuysen Kennedy, of the county of Warren.

The commissioners issued their precept to the sheriff, returnable at the house of the alleged lunatic, a farmer living a few miles from Phillipsburg, and that officer returned twenty-four men as jurors, who all appeared. Counsel appeared for the petitioners and also for Mr. Kennedy. The commissioners sat in a room in the house and Mr. Kennedy was present with his counsel. Witnesses were sworn and the cause summed up by counsel on each side, and then, according to the affidavit of the chairman of the commission, the counsel and all parties except the commissioners, the jury and Mr. Kennedy were directed to leave the room, and did so. Then the jury were told by the commissioners that they might ask Mr. Kennedy any questions they chose. The chairman of the commission asked him if he had anything to say, and he said "Nothing, except that he wanted to take care of his own property." He then left the room. Then the chairman of the commission charged the jury, stating that they were to find whether or not Mr. Kennedy was of unsound mind and by reason thereof unable to take care of himself and his property. Then—the commissioners still being in the room—the jurors had a conference, and asked the commissioners if they might take a vote by ballot. The commissioners answered in the affirmative. Then it was agreed among the jurors that the question should be whether or not Mr. Kennedy was capable of taking care of his property. The chairman of the commission explained to the jury that a vote on that question would be proper provided it was understood that they were voting upon the question whether he was of unsound mind or not and by reason of such unsoundness incapable of properly taking care of his property. Blank ballots were then prepared and each juror voted yes or no, as he thought Mr. Kennedy was or was not capable of taking care of himself and his property. The result was that fifteen voted *no* and nine voted *yes*. The fifteen voting *no* then signed the inquisition, which had already been prepared in blank.

I find the foregoing facts from a reading of the several affidavits of the chairman and one juror. The affidavit of the juror states that he understood the question upon which the jurors voted was whether Mr. Kennedy was or was not capable of taking care of his property. And that this was the view of the individual jurors is inferable from the fact that those who voted that he was so incapable voted *no* and those who thought he was capable voted *yes;* for, if the question was whether he was of sound or unsound mind, the vote of *no* would seem to be in favor of his sanity rather than of his insanity.

The principal ground relied upon for setting aside the return was the conduct of the commissioners in charging the jury in the absence of the alleged lunatic and his counsel and remaining in the jury-room with the jurors while they were deliberating as to their finding. The chairman of the commission, in his affidavit, swears that he understood that they so remained with the jurors by the consent of the counsel for Mr. Kennedy. This is denied by that gentleman, and as no other person seems to have understood him to say anything of the kind, I must infer that the chairman of the commission is mistaken. Be that as it may, the consent by the counsel of the alleged lunatic that the commissioners might be present while the jury was deliberating cannot be construed as a consent to their giving directions in the nature of a charge to the jury in his absence.

It was held in *Lindsley's Case, 1 Dick. Ch. Rep. 357,* that the commissioners and jury might lawfully examine the alleged lunatic privately and apart from his counsel, and therefore the commissioners here were warranted in staying in the room with the jury while that examination was made; and it is probable that they inferred that if they had the right to be present at a private examination of the alleged lunatic, they also had the right to be present in the absence of counsel and the alleged lunatic, while the jury were deliberating and determining what should be their finding. But in this I feel constrained to say that I think they fell into an error which is fatal to this return. The very idea of a jury—whether a grand jury, or inquest, or a petit jury—is that their conference and deliberation in deter-

In re Kennedy.

mining what shall be their finding or verdict, shall be held either alone, with no person present, or, if in the presence of the court, then also in the presence of counsel, so that the counsel may hear all that is said and make objections and take exceptions if they shall see fit. It is, I believe, well settled that while the public prosecutor has the right to be present while the evidence is being laid before the grand jury, he has no right to be present while the jurors are conferring together and considering the effect of the evidence. Their deliberations are, of right, strictly private.

In the present case it appears not only that the commissioners remained in the room after the counsel and the alleged lunatic had left the room, but also that they proceeded to charge the jury, and inform them of the issue, and that they answered questions and made suggestions as to the mode of ascertaining their sentiments on that subject in the use of the ballot. I can find no authority for such practice, and I think it would be dangerous to give it the approval of the court. One reason why the deliberations of a jury are had in private is that each one may express his views without restraint, and that there may be a free and full interchange of views and arguments.

*In the matter of Arnhout, 1 Paige 498*, the sheriff, who had charge of the jury, remained in the room with them while they were deliberating, and the return was set aside on that ground. And I know of no distinction in this respect between a grand jury, a petit jury, and an inquisition of lunacy.

I think it would be making a dangerous precedent to permit this return to stand, though I am well satisfied that the commissioners were entirely innocent of any attempt to influence the jury.

From the statement of counsel for the petitioners, and from the fact that only fifteen out of twenty-four jurymen joined in the return, it is plain that it is not so clear a case of lunacy as to be outside the range of debate.

I will advise that the return be set aside.